## MAYNARD v. FELLOWS.

43  255
66  517

A note, signed by two partners with their individual names, is sufficient to bind the firm.

The substitution of such a note for one signed with the name of the firm, after the partnership is dissolved, does not necessarily make it an individual debt, if there was no intention to change its character.

It is not necessary to declare upon a partnership note as such, unless its form is such as to render it necessary to prevent a variance.

In a trustee process it may be material, and is therefore competent, for the parties to inquire whether or not the note is an individual or a partnership note, in order to ascertain its priority, if any, over other liens.

The true relations of the parties to negotiable paper may always be shown, except against those who have without notice acquired rights depending on their apparent relations.

It is the duty of counsel to see that no improper papers are sent to the jury.

The omission to give a particular instruction to the jury is not cause to set aside a verdict, unless such charge was requested.

THIS action was assumpsit by Lambert Maynard against John Curtis and Nathan Hunkins, principals, and Samuel Hunkins and Samuel Fellows, trustees ; and was brought to recover the amount of a promissory note, signed individually by the principal defendants, and payable to the plaintiff.

The plaintiff contended that it was given in settlement of a claim against them as partners, after their dissolution, and was not designed to change it from a partnership debt to the separate debt of the individuals ; and there was evidence tending to show such facts, but the declaration was not against them as partners.

The plaintiff sought to charge the trustees for the avails of certain bricks, wood, and other property, conveyed by the principals to them, October 12, 1857, and which he alleged belonged to the vendors as partners, and he claimed that the conveyance was fraudulent and void as to creditors. On the other hand, the trustees denied the existence of any such partnership, but contended that Nathan Hunkins was the sole owner of the property, and that the sale was in good faith, and valid ; and they introduced evidence tending to prove these facts.

To establish the fraudulent intent on the part of the vendors, the said John Curtis testified that, shortly before the sale, Nathan Hunkins informed him that their creditors were pressing for payment, and to save cost they must put their property out of their hands, and finally proposed to put it into the hands of the trustees; assuring Curtis that it would not interfere with their disposition of the property as before; and that with these views the conveyance was agreed to by Curtis, and made without any consideration.

He was also permitted to testify, against the trustees' exception, that the said Nathan Hunkins, at the time of the agreement to make disposition of the property as aforesaid, said that as their creditors could take his private property, he should dispose of it, and advised the said Curtis to do the same with his. It was done accordingly.

The court instructed the jury that this testimony as to the conveyance of the private property of the said Nathan Hunkins and John Curtis, at or about the same time, together with the declarations and admissions of the said Nathan, above stated, were competent to be weighed upon the question, as to the intent of the vendors, whether the vendees had knowledge thereof or not; but that it was not to be considered upon the question, whether the vendees were privy to any fraudulent purpose in the conveyance to them.

There was evidence tending to prove that the property was conveyed to the trustees in payment of a large debt due from Nathan Hunkins to them, on his own account, with a smaller sum due them for debts which they had assumed to pay, and which were contracted on account of the business in which the plaintiff claimed that Curtis was interested with said Nathan Hunkins as a partner. And the plaintiffs thereupon contended that a conveyance of the partnership property, to pay a private debt of one of the partners, was not valid as to a partnership creditor.

The court instructed the jury, for the purposes of this case, that if the debt was originally a partnership debt, and in taking the note there was no purpose to change its character in that respect, it might still be deemed a partnership debt.

The jury returned a verdict for the plaintiff, charging the trustees in the sum of $2,291.19, and, in answer to questions put to them, found that there was a partnership; that the trustees knew that the property conveyed belonged to the partnership; that the conveyance was fraudulent, and that the trustees received, from avails of the property sold, $3,000.

To these rulings and instructions the trustees excepted, and moved that the verdict might be set aside for these causes, and also because the plaintiff's counsel, without the knowledge of the counsel for the trustees, handed to the jury, as they retired, with the writ, a motion to amend the declaration, by declaring against the principal defendants as partners.

*Tuck & French*, for the plaintiff.

*C. H. Bell*, for the defendant.

BELL, C. J.    The note upon which this action is founded is signed by the defendants, severally, with their individual names, and it is declared upon merely as the joint note of the defendants, without reference to any partnership.    By the principles settled in the case of *Benson* v. *Ela*, 35 N. H. 416, it must be taken conclusively, from this form of declaring, that the plaintiffs have made their election to make their attachment, as upon their claim against the individual signers,' and not as against them as partners ; because if they had so chosen they could have declared against them as partners, and thus have secured a partnership creditors' priority over individual creditors.    But this principle has been applied conclusively, only as between creditors claiming partnership property by an attachment, or levy on execution.    And we think it should not be extended further.    It is laid down, as an exception to the general rule, that strangers are not bound by the proceedings in an action between others.    There is no question here between attaching creditors, and the rule consequently does not govern this case.

In *Page* v. *Carpenter*, 10 N. H. 77, it was held, that if a creditor of a partnership accepts the note of one of the partners, and brings his action upon it against him alone, and attaches the partnership property, he does not by such attachment acquire a right to contest the claim of a purchaser of the property from the firm, on account of fraud, because, as the court there held, a creditor of an individual partner can not by attachment acquire any right to the specific property of the firm.    The attachment entitles him to the partner's share of the net balance, after a settlement of all the affairs of the firm.

This case does not control the present, for two reasons ; first, because it is not an action against one, or some of the partners, but is brought against them all ; and, secondly, because there is here no such attachment as was there in question.    The service of a trustee process creates an attachment of the principal debtor's property in the hands of the trustee, but it is not accompanied by any interference with the possession of the specific property, and it reaches, in the case of funds, only the balance equitably due, and justly applicable to the attaching creditor's debt ; and in the case of specific property only such part as remains after all prior claims of the trustee and others have been satisfied.

By the general rules of the common law, the signature of a note by two partners, with their individual names, is sufficient to bind the firm.    Thus it is said in Chitty on Bills 57, that whenever a person draws, accepts, or indorses a bill for himself and partner, he should always express that he does so for himself and partner, or subscribe both names, or the name of the firm.    Bailey on Bills 45 ; *Galway* v. *Mathews*, 1 Camp. 503 ; *McGregore* v. *Cleaveland*, 5 Wend. 475.    The signatures of both partners could hardly be more effectual than the signature of both names by one only.

Where the form of the note, or the manner of signing it, are such as to render it necessary, in order to conform the allegations to the proof, to refer to the firm or partnership, it is necessary in some form to describe the note as a partnership note.    But where there

is nothing in the form of the instrument to render this necessary, a partnership note may well be declared on in the same form as any other joint note; and unless the rights of other partnership creditors should be involved, it is immaterial whether the note is one of a partnership, or merely a joint note. The funds of both signers, whether held in partnership or not, and the individual property of both, are liable to the payment. If, then, the writ require the officer to attach the estate of the principal debtors, in the hands of a trustee, the joint funds, whether held in partnership or not, will be held by the service. But if the funds of the debtors are subject to other claims, it then becomes necessary to ascertain the nature and priority of the liens before the trustee can be charged. So if the funds of the partnership are held by an after attachment of another partnership creditor, and a defense is made on that ground, it may become material to inquire, if the claim of the plaintiff is a partnership debt which has a priority of claim upon partnership property, or merely a joint debt, in which case the trustee can be charged only for the residue, after the firm debt is satisfied. In the same manner, if, as in this case, the trustee claims the property by virtue of an assignment from the owner, it may become necessary to inquire whether the property sought to be held was the property of one or all the partners, whether the assignment was on good consideration, and *bonâ fide*, or fraudulent for any cause in fact or in law; as in this case, if the assignment was of partnership property in payment of an individual debt of one of the partners to the fraudulent exclusion of the partnership creditors; and whether the claim of the creditor is really such, whatever its form, as entitles him to raise the question of the validity of the assignment.

Now the principle settled here is, that the form of negotiable paper is at most the slightest *primâ facie* evidence of the true character and relations of the parties whose names appear upon it. The actual debtor may appear as a principal, or surety; as drawer, maker, acceptor, or indorser; and the members of a firm may appear either on the face or back, in their individual names, or in the name of the firm, in any of the capacities mentioned; and as between themselves it is wholly immaterial in which. If the paper is made, or signed in any manner in the course of the business of the firm, it is partnership paper. *Richardson* v. *Huggins*, 23 N. H. 122. The general rule is, undoubtedly, that the law presumes that the parties to a promissory note stand toward each other in the relations in which their signatures appear; but this is a mere *primâ facie* presumption, and whenever it is necessary, for the purposes of justice, the truth may be shown to be otherwise. *Whitehouse* v. *Hanson*, 42 N. H. 9. If it would be productive of injustice to others, who have become holders of the paper, or who have acquired other rights, dependent upon the apparent relations of the parties, in ignorance of the facts, the general presumption can not be repelled by testimony. But this exception can not be extended beyond the reason of it. In this case, justice to the plaintiff requires that the truth should be admitted; and no injustice is done to the trustee to hold

him chargeable for property which he has got into his possession wrongfully, if the plaintiff is, as he offered to prove, a creditor of the partnership, and the property was assigned to pay a private debt. It was, therefore, the right of the plaintiff to show, by extrinsic evidence, that his debt was a partnership debt; and the instruction to the jury, that, for the purposes of this case, if the debt was originally a partnership debt, and in taking the new note, there was no purpose to change its character in that respect, it might still be deemed a partnership debt, was correct.

And this view furnishes an answer to the exception, that the amendment was sent to the jury. The amendment was unnecessary and immaterial, and could not have operated prejudicially to the interests of the trustees. But there is a further answer to this point of the case. It is founded on a mistaken view of the duties of counsel. It is not enough to say that a paper was improperly sent to the jury by the adverse party without his knowledge. It is his duty to ascertain what papers are sent to the jury, before they leave the court; and no motion for a new trial should be allowed, merely because this duty has been neglected. It should appear that the counsel used due care, that none but proper papers were passed to the jury; and that the paper in question was sent to the jury by some mistake, or through some trick or artifice of the opposite counsel. Here it is only said that the paper was handed to the jury without the knowledge of the trustees' counsel.

No objection can be sustained to the verdict, on the ground that the judge did not instruct the jury that the burden was on the plaintiff to show that the note was not a several note; that is, that it was a partnership debt. Admitting the presumption to be as the counsel contend, that the note was a several note, it was the duty of the counsel to call the attention of the court to the point upon which he thinks the jury ought to be instructed, and request the specific charge to be given; and if the court then improperly refuse the instruction, it furnishes good cause to set aside the verdict. *Moore* v. *Ross*, 11 N. H. 547; *Goodrich* v. *Eastern R. R.*, 38 N. H. 396.

Evidence was admitted of a conversation between one of the partners and the other, relative to the embarrassed condition of the firm, and their exposure to costs, and of a proposed transfer of their property to the persons now sued as trustees. It was objected to as evidence against the trustees, because they were not present, and they are not to be affected by the conversations of third persons behind their backs; but we think the answer of the plaintiff's counsel as to this point is quite satisfactory. A fraudulent intention must be shown as well on the part of the grantors as of the grantees. They are independent facts, and may be shown by independent evidence. The proof of the contemporaneous declaration of the partners was competent to show their intentions, and thus to prove one point of the case. Proof that the trustees knew and assented to that intention, was then necessary, and that might be equally derived from their acts and declarations in the absence of the partners.

"To prove the fraud of the grantor, his conduct and declarations before the conveyance, may be the best evidence of his fraudulent purpose; and if this is proved, the knowledge of it on the part of the fraudulent grantee may be proved by any circumstances tending to show a knowledge of the design of the grantor. Without this latter evidence, the former would be wholly ineffectual to defeat the conveyance. The concurrence of a fraudulent design in both, must be proved in order to defeat the conveyance." *Bridge* v. *Eggleston*, 14 Mass. 245; *Foster* v. *Hall*, 12 Pick. 100; and the same principles are distinctly held in *Seavey* v. *Dearborn*, 19 N. H. 358.

*Judgment on the verdict.*